IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALERIE LAVERNE WHITE, | ) | Case No. 1:18cv0656 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

**I.     Introduction**

Plaintiff, Valerie Laverne White, seeks judicial review of the of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act ("Act"). The parties consented to my jurisdiction. ECF Doc. 13. Because the ALJ supported her decision with substantial evidence and because White has not identified any incorrect application of legal standards, the final decision of the Commissioner must be AFFIRMED.

**II.    Procedural History**

White applied for disability insurance benefits and supplemental security income on April 24, 2015, alleging a disability onset date of November 20, 2014. (Tr. 226-227).[1] After her application was denied initially on August 28, 2015 (Tr. 155-158) and on reconsideration on October 19, 2015 (Tr. 173-175), White requested an administrative hearing. (Tr. 185).

---

[1] White's prior applications for benefits were denied in December 2012. (Tr. 77-90).

Administrative Law Judge ("ALJ") Joseph Vallowe heard the case on December 23, 2016 (Tr. 37) and denied White's claim on March 31, 2017. (Tr. 7-30). On January 18, 2018, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). White filed this action on March 21, 2018 challenging the Commissioner's final decision. ECF Doc. 1.

### III. Evidence

#### A. Relevant Medical Evidence[2]

On November 16, 2014, White went to the emergency room complaining of right knee swelling and abdominal pain. White reported mild diffuse tenderness in her abdomen. (Tr. 319). An X-ray of her right knee showed a small suprapatellar joint effusion and mild femoro patellar osteoarthritis. (Tr. 321, 680). Examination revealed suprapatellar and infrapatellar swelling, patellar joint tenderness, crepitus on external rotation of the knee. She had full range of motion of the knee, extension of the knee and flexion. (Tr. 319).

On December 8, 2014, White met with Jared Placeway, D.O., for an examination of her right knee. (Tr. 351-354). White's knee had been hurting for two weeks. Examination showed right knee tenderness and pain, decreased bilateral hip strength, possible mild right knee effusion, and an antalgic gait. She had full range of motion with full extension of her knee but to 120 degrees with flexion. (Tr. 353-354). Dr. Placeway noted Babinski's downgoing.[3] (Tr. 353). He diagnosed a medial meniscal tear, osteoarthritis and a component of patellofemoral pain syndrome. He ordered an MRI to evaluate for meniscal tear. (Tr. 354). The MRI on December 17, 2014 showed maceration of the posterior horn and body of the medial meniscus, an adjacent

---

[2] The court's recitation of the medical evidence is limited to the evidence cited by the parties as relevant to the issue White raises on appeal.

[3] Downgoing toes on a Babinski's test is a normal finding. http://www neuroexam.com/neuroexam/content32.html (last visited 1/24/2019).

2

parameniscal cyst, and chondromalacia with the medial joint compartment affected to a higher degree compared to the lateral joint compartment. (Tr. 419)

On May 4, 2015, White met with Angela F. Grady, D.P.M., for treatment of her calluses and toenails. She reported that they were painful in her shoes with ambulation and that she had burning in her feet. Dr. Grady noted that White was diabetic with painful hyperkeratosis and onychomycosis. (Tr. 329).

White returned to Dr. Placeway on August 11, 2015. (Tr.665-670). She reported that her knee pain was tolerable and improved from her initial consultation. (Tr. 666). Examination showed bilateral lower extremity weakness, right knee pain, and a mildly antalgic gait, but normal lower extremity reflexes, no loss of balance with ambulation, and an independent gait. (Tr. 669-670). Dr. Placeway referred White to physical therapy. (Tr. 670).

On August 19, 2015, White began treating with physical therapist, Elizabeth Musser, for rehabilitation of her right knee. (Tr. 659). White reported difficulties of activities of daily living including donning/doffing shoes, cleaning vacuuming, and lifting. Examination showed that White had decreased ability to weight bear on her right lower extremity, which was flexed slightly with a decreased B medial longitudinal arch. White also had reduced strength throughout her right lower extremity and in the left side of her hip. (Tr. 662). She also had reduced range of motion in her lower extremities and pain with motion. Ms. Musser observed that White had pain when standing from sitting, which was labored. White had moderate use of her upper extremities and used them when squatting or bending. She had pain when squatting and was slow to retrieve items on the floor. Ms. Musser observed that White's gait was independent without an assistive device, but she had decreased right stance time. Ms. Musser

3

opined that White suffered pain with all weight bearing positions/activities and was limited to walking to "more than 10 minutes," stairclimbing and rising from chair. (Tr. 663).

White returned to physical therapy on September 3, 2015. She reported her right knee pain was 7/10 with constant aching and throbbing. She also reported swelling, clicking and popping. Her pain increased with sleep, sweeping, mopping, bending to tidy, and walking up and down stairs. Ms. Musser observed that White ambulated with an antalgic gait in her right lower extremities. She also had reduced range of motion in the right knee. (Tr. 644). Ms. Musser noted that White had mild right knee flexion contracture with decreased flexibility anterior/posterior in her hip and calf, and weak gluteals contributing to muscle imbalance, "likely related to knee pain." She also had decreased patellar movement and pain with lower back extension likely related to hip flexor tightness. (Tr. 645).

On September 8, 2015, physical therapist, Tracy Adkins, noted that White was not compliant with her home exercises and was wearing flip flop sandals instead of more supportive shoes. (Tr. 640). White had an antalgic gait, a reduced range of motion in her right knee, and her symptoms remained unchanged. (Tr. 640-641). On September 10, 2015, Ms. Adkins noted that White was very lethargic. She was sleepy during treatment and occasionally dozed off. (Tr. 638). She had an antalgic gait and reduced range of motion in extension and flexion of her right knee. White complained of left knee discomfort which caused limitations in her exercises. (Tr. 638).

In October 2015, White returned to Dr. Placeway. (Tr. 761-766). She reported intermittent knee pain that was helped by wearing a knee brace. (Tr. 761). Her pain was controlled and alleviated with ibuprofen. (Tr. 762, 766).

4

On December 3, 2015, White reported increased right knee pain. She had not taken any medication that day. Ms. Musser noted that it had been several weeks since White had attended therapy. (Tr. 813).

On December 10, 2015, White presented to Ms. Musser for therapy for her knees. Ms. Musser observed an antalgic gait with trunk compensations. (Tr. 831). White had tenderness with palpitation of the diffuse lumbosacral muscles and reduced range of motion in her right knee extension and flexion. She also had reduced strength in her right lower extremities. (Tr. 832). White reached modified ambulating with a straight cane on her left and Ms. Musser encouraged her to use the cane more. The range of motion in her right knee improved. However, she reported little change in her pain levels. (Tr. 833). She was discharged from therapy on December 10, 2015. (Tr. 833-834).

On April 11, 2016, White met with Dr. Placeway. She reported pain of 8/10 and described as pulling, tightness, intermittent, occurring three times daily, worse at night and exacerbated by walking. (Tr. 898). Dr. Placeway observed tenderness to palpation of the medial joint. He refilled her medications and scheduled follow-up in six months. (Tr. 902).

On October 5, 2016, White went to the emergency room complaining of chest pain and depression. White reported that her depression had worsened since May 2016 when her son was murdered. She wanted to hurt the people who murdered her son but did not know who they were. (Tr. 735). She had a dysphoric mood and hallucinations. (Tr. 736).

 **B.** **Opinion Evidence**

  **1.** **Consultative Examination – Dorothy Bradford, M.D., July 2015**

Dr. Dorothy Bradford examined White on July 13, 2015. (Tr. 606-613). Examination showed decreased right knee range of motion, full upper and lower extremity strength, and

5

normal reflexes and sensation. (Tr. 612). Dr. Bradford noted that White was obese and an insulin dependent diabetic but stated "[i]n my medical opinion there are no activity restrictions." (Tr. 613).

### 2.     Consultative Mental Examination – Dr. Chuck – August 2015

Dr. Jorethia Chuck conducted a psychological evaluation of White on August 12, 2015. (Tr. 616-621). White reported becoming depressed after she lost her job. She also reported symptoms of depressed mood, fatigue/loss of energy, crying spells, feelings of worthlessness, difficulty with concentration, loss of usual interests, irritability and insomnia. (Tr. 618). White was able to dress, bathe and groom herself, but she could not do her own laundry, sweep or vacuum due to back pain. (Tr. 618). Dr. Chuck observed that White's gait was guarded and she walked with a limp. (Tr. 619). Mental examination revealed that White had a depressed affect and dysthymic mood. Her attention and concentration were impaired, and her fund of information was somewhat limited. Dr. Chuck opined that White's depressive symptoms may affect both her insight and judgment. According to White, her symptoms were currently limiting her functioning. Dr. Chuck diagnosed major depressive disorder. (Tr. 619). She opined that White displayed difficulties with concentration due to her depressive symptoms and that her current depression and physical ailments prohibited employment. (Tr. 620-621).

### 3.     State Agency Reviewing Physicians

Elizabeth Das, M.D., reviewed White's records on behalf of the agency on August 3, 2015. Dr. Das opined that White was capable of performing work at the medium exertion level with no ladders, ropes or scaffolds and with frequent stooping, crouching and crawling. (Tr. 101).

Stephen Sutherland, M.D., reviewed White's records on behalf of the agency on October 11, 2015. Dr. Sutherland affirmed the opinions expressed by Dr. Das. (Tr. 130).

C. **Testimonial Evidence**

1. **White's Testimony**

White testified at the December 23, 2016 hearing. (Tr. 39-68). She was born on August 22, 1962 and was 54 years old at the time of the hearing. (Tr. 39). White is 5'4" and weighed 174 pounds. (Tr. 40). She did not have a driver's license and used public transportation. (Tr. 41).

White had been living with her daughter since September. (Tr. 39). She did not help with any shopping or household chores. She spent most of her day sitting on the couch. (Tr. 61-62).

White had prior work experience caring for infants. (Tr. 43). She lost her previous jobs because she fell asleep during work. White felt that her medications for diabetes and high blood pressure caused her to fall asleep during the day. (Tr. 47). She was still taking those medications and they still caused her to sleep during the day. She did not sleep much at night and would sleep for an hour or two after her meals and taking medications. (Tr. 47-49). She also took medication for acid reflux, depression, and pain. (Tr. 49).

White suffered from pain in her right foot and knee. She had not worn her knee brace since September when she was locked out of her apartment. (Tr. 54). She used a cane to walk. (Tr. 55). She had not had surgery for her knee. She also had back pain (Tr. 55) and sleep apnea. She did not use the machine at night because it kept her awake. (Tr. 56). White also had depression but no thoughts of suicide. (Tr. 57). She did have thoughts of hurting others and, in response to an attack, hit the mother of her son's child in July 2016. (Tr. 58).

7

White estimated that she could stand and walk for 20 to 30 minutes. (Tr. 63). She was able to walk to the end of the block to catch the bus. She did not try to lift or carry any amount. She could dress herself. Kneeling or crawling hurt. (Tr. 64). She needed assistance paying her bills. Her memory was poor and she had problems finishing tasks. (Tr. 65).

### 2. Vocational Expert's Testimony

Vocational expert ("VE"), Mark Anderson, also testified during the hearing. (Tr. 68- The VE considered White's past work experience to be that of a nursery school attendant. (Tr. 69). The VE testified that an individual of White's age with the same education and experience who was able to perform light work with frequent right foot control; occasional climbing ramps and stairs; no climbing, ropes, ladders or scaffolds; occasional stooping, kneeling, crouching and crawling; no fast paced work; was limited to tolerating few changes in the routine work setting defined as occasional; was limited to performing simple, routine, repetitive tasks, but not at a production rate pace; must avoid any exposure to hazards, unprotected heights, moving mechanical parts; who could not operate a motor vehicle commercially; must avoid concentrated exposure to dust, odor, fumes and pulmonary irritants; and who required three-minute breaks every hour, including regularly scheduled breaks and lunch, would not be able to perform White's past work. However, such an individual would be able to perform the jobs of electronics worker, mail clerk, and assembler of electrical accessories, with a significant number of these jobs in the national economy. (Tr. 70-71).

## IV. The ALJ's Decision

The ALJ's March 31, 2017 decision contained the following findings relevant to this appeal:

> 5. White had the residual functional capacity to perform light work except she could frequently operate right foot controls. She could occasionally climb

8

- ramps and stairs, never climb ladders, ropes or scaffolds; and she could occasionally stoop, kneel, crouch and crawl. She could not be exposed to hazards, unprotected heights, moving mechanical parts, or operate a commercial motor vehicle. She needed to avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. She was limited to performing simple, routine, and repetitive tasks, but not at a production rate pace. She was limited to tolerating few changes in a routine work setting, defined as occasional. She required a three-minute break every hour, including regularly scheduled breaks and lunch. (Tr. 16-27).

10. Considering White's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform. (Tr. 28).

Based on all his findings, the ALJ determined that White had not been under a disability from November 20, 2014, through the date of this decision. (Tr. 29).

## V. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence means "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

The court may not try the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir. 1997). If supported by substantial evidence and decided under the correct legal standard, the Commissioner's decision must be affirmed even if this Court would decide the matter differently, and even if

substantial evidence also supports the claimant's position. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc.)

The court also must determine whether the ALJ decided the case using the correct legal standards. If not, reversal is required unless the legal error was harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); accord *Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010). Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering an application for supplemental security income or for disability benefits, the Social Security Administration is guided by the following sequential benefits analysis: at Step One, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step Two, the Commissioner determines if one or more of the claimant's impairments are

"severe;" at Step Three, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step Four, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step Five, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B. Evaluation of Medical Records from White's Physical Therapists

White argues that the ALJ did not properly evaluate the opinion of her physical therapist, Ms. Musser. ECF Doc. 15 at Ex. 46, Page ID# 1051-1056. Under the regulations in effect when White filed her disability claim, Ms. Musser was considered an "other source." SSR No. 06-03p, 2006 SSR LEXIS 5, states that "other sources" are important and should be properly evaluated:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR No. 06-03p also provides factors to be applied in evaluating opinion evidence from "other sources." These factors include:

1) How long the source has known and how frequently the source has seen the individual;
2) How consistent the opinion is with other evidence;

11

3) The degree to which the source presents relevant evidence to support an opinion;
4) How well the source explains the opinion;
5) Whether the source has a specialty or area of expertise related to the individual's impairment (s), and
6) Any other factors that tend to support or refute the opinion.

Here, however, there was no opinion report from Ms. Musser in the record. White argues that the ALJ should have assigned great weight to observations recorded in Ms. Musser's treatment notes. The ALJ did not mention Ms. Musser by name in his decision. However, his decision shows that he reviewed the treatment notes from White's physical therapy sessions. The ALJ stated:

> Medical records from MetroHealth Medical Center from August 2015 through April 2016 contain evidence of * * * physical therapy for right knee chondromalacia and osteoarthritis. (B12F). * * * However, the claimant * * * was not compliant with home exercise * * * and was not wearing appropriate supportive foot wear (Exhibit 12F). * * * Examinations revealed right knee pain, decreased lower extremity strength, decreased right knee range of motion, moderately elevated blood pressure levels, obesity, a lethargic, tired, fatigued appearance, and occasional tearfulness when discussing housing difficulties. (Exhibit B9F, B12F). However, the claimant maintained normal lower extremity sensation and she admitted improvement with use of a right knee brace. (*Id*.).

(Tr. 20). White complains that the ALJ did not specifically mention her physical therapist, Ms. Musser. But, the treatment notes show that White met with more than one provider during her physical therapy sessions. For example, on September 8, 2015 and September 10, 2015, White met with Tracy Adkins for therapy. (Tr. 636, 640). Considering that more than one provider was involved with White's physical therapy, the ALJ's failure to mention a specific therapist by name is of little consequence.

Moreover, as contended by the Commissioner, there is no "opinion" from Ms. Musser in the record. To the extent that White contends that Ms. Musser's treatment notes documented the severity and symptoms of her conditions, these treatment notes do not qualify as "medical

12

opinions" under the Social Security regulations and "without more, are not the type of information from a [] physician which is entitled to great weight. . . ." *Simpson v. Comm'r of Soc. Sec.,* No. 1:13-cv-640, 2014 U.S. Dist. LEXIS 107840 at *24 (S.D. Ohio 2014), quoting *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007). *See also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 749 (6th Cir. 2007) (noting that a treating source's general findings are relevant, but not controlling without a specific RFC assessment). The court concludes that Ms. Musser's treatment notes were not opinion evidence.

Furthermore, even if Ms. Musser's treatment notes were construed as opinion evidence, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources,' the ALJ must nevertheless "consider" those opinions." *Hatley v. Comm'r of Soc. Sec.,* 2014 U.S. Dist. LEXIS 99471, 2014 WL 3670078 (N.D. Ohio); see also *Brewer v. Astrue,* 2012 U.S. Dist. LEXIS 10643, 2012 WL 262632, at *10 (N.D. Ohio 2012) ("SSR 06-03p, 2006 SSR LEXIS 5 does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

Here, it is quite clear that the ALJ considered the notes from White's physical therapy treatments. He referred to specific portions of those notes in his discussion. For example, he noted that White was not compliant with home exercise and was not wearing supportive foot wear. This information was from physical therapy treatment notes on September 8, 2015. (Tr. 640). The ALJ was not required to discuss every treatment note from White's physical therapy course of treatment. And, there were many notes that would not have been helpful to White's

claim. For example, on December 3, 2015, Ms. Musser noted that it had been several weeks since White had attended therapy. (Tr. 813).

Ms. Musser was not a treating physician and the ALJ was not required to assign controlling weight to her treatment notes. Moreover, Ms. Musser's treatment notes were not a "medical opinion." The ALJ properly considered them along with the rest of the evidence in the record. And, finally, even if her treatment notes could be construed as opinion evidence, the ALJ had discretion to determine the proper weight to assign to those opinions.

The ALJ did consider the medical opinions that were in White's record. (Tr. 26-27). He assigned little weight to the opinions of the state agency reviewing physicians, Elizabeth Das, M.D., and Stephen Sutherland, M.D. (Tr. 26). He assigned partial weight to examining physician, Dorothy Bradford, M.D., who opined that White had no activity restrictions. (Tr. 26). He also assigned partial weight to the opinion of examining psychologist, Jorethia Chuck, Ph.D. (Tr. 26-27). The ALJ's RFC determination was more limited that the opinions expressed by the medical experts. He based his decision on the record as a whole, including the medical evidence, White's testimony, her activities and the medical opinions. His decision was supported by substantial evidence and White has failed to identify any incorrect application of legal standards.

## VI. Conclusion

Because substantial evidence supported the ALJ's decision and because White has not identified any incorrect application of legal standard, the ALJ's final decision is AFFIRMED.

IT IS SO ORDERED.

Dated: January 25, 2019

Thomas M. Parker
United States Magistrate Judge

14